**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| CXT SYSTEMS, INC., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Case No. 2:18-CV-00173-RWS-RSP |
| | § | |
| THE CONTAINER STORE, INC., | § | |
| | § | |
| *Defendant*. | § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff CXT Systems, Inc. is a Texas corporation with its principal place of business in Marshall, Texas. CXT has initiated eight lawsuits in the Eastern District of Texas ("EDTX") asserting patent infringement against a total of nine retail companies. In each of these co-pending suits, CXT alleges infringement of all or some of the following U.S. Patents: 6,412,012; 6,493,703; 6,571,234; 7,016,875; 7,257,581; 8,260,806; and RE45,661. The co-pending suits were consolidated for all pretrial issues, excepting venue. *See* Consolidation Order, [Dkt. No. 22].

In its suit against Defendant The Container Store, Inc., CXT alleges that all of the patents-in-suit are infringed through The Container Store's website and related systems. [Dkt. No. 16]. The Container Store moves the Court to transfer this case to the Northern District of Texas ("NDTX") under 28 U.S.C. § 1404(a), contending that the NDTX is a more convenient venue because The Container Store's corporate headquarters is in Coppell, Texas (which straddles the boundary between the NDTX and the EDTX), and all likely trial witnesses for The Container Store, as well as the accused website and related systems, are located there on the NDTX side of Coppell. [Dkt. No,. 22]. CXT opposes the transfer, and argues that The Container Store has not identified (1) any specific sources of proof that cannot be easily accessed and transported to either

district, and (2) any key non-party witnesses that could not travel to either district with comparable convenience. [Dkt. No. 25]. There are no other pending transfer motions in the co-pending suits.

## DISCUSSION

### I. Proper Venue

The venue statute permits a district court to transfer a case to another district or division within the district "[f]or the convenience of parties and witnesses" and "in the interests of justice." 28 U.S.C. § 1404(a). The preliminary question under § 1404(a) is whether the case "might have been brought" in the destination venue. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) ("*Volkswagen II*"); *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). The parties do not dispute that the case could have been brought in either the EDTX or the NDTX.

### II. The Container Store's Good Cause Burden

Once the court resolves the preliminary jurisdiction question, the movant must meet its "*good cause*" burden. *Volkswagen II*, 545 F.3d at 315 (emphasis added). The movant meets its good cause burden by demonstrating that the transferee venue is *clearly more convenient* than the venue chosen by the plaintiff. *Id.* "[W]hen the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *Id.* The good cause burden "reflects the appropriate deference to which the plaintiff's choice of venue is entitled." *Id.*

"[T]he determination of 'convenience' turns on a number of private and public interest factors, none of which are given dispositive weight." *Volkswagen I*, 371 F.3d at 203 (quoting § 1404(a)). Although these factors "are appropriate for most transfer cases, they are not necessarily exhaustive or exclusive." *Volkswagen II*, 545 F.3d at 315. Unless the balance of factors is strongly in favor of the defendant, the plaintiff's choice in forum should be respected. *Gulf Oil Corp. v.*

*Gilbert*, 330 U.S. 501, 508 (1947). Ultimately it is within a district court's sound discretion to transfer venue under § 1404(a), but the court must exercise its discretion in light of the particular circumstances of the case. *Hanby v. Shell Oil Co.*, 144 F. Supp. 2d 673, 676 (E.D. Tex. 2001). "Additionally, when deciding a motion to transfer venue under § 1404(a), the court may consider undisputed facts outside of the pleadings such as affidavits or declarations but it must draw all reasonable inferences and resolve factual conflicts in favor of the non-moving party." *AGIS Software Dev. LLC v. Apple, Inc.*, No. 2:17-CV-00516-JRG, 2018 WL 2721826, at *2 (E.D. Tex. June 6, 2018).

**A. Private Interest Factors**

The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 315 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). The Container Store contends, and CXT apparently does not disagree, that the availability of compulsory process is a neutral factor, as the relevant witnesses are subject to the subpoena power of either court. *See* [Dkt. No. 22], 7; [Dkt. No. 25], 16.

**i. Sources of Proof**

For this factor to weigh in favor of transfer, the movant must demonstrate that transfer will result in more convenient access to sources of proof. *Remmers v. United States*, No. CIV. A. 1:09-CV-345, 2009 WL 3617597, at *4 (E.D. Tex. Oct. 28, 2009). Courts analyze this factor in light of the distance that documents, or other evidence, must be transported from their existing location to the trial venue. *Uniloc USA, Inc. v. Activision Blizzard, Inc.*, No. 6:13-CV-256, 2014 WL 11609813, at *2 (E.D. Tex. July 16, 2014) (citing *Volkswagen II*, 545 F.3d at 316) (noting that this

factor is still relevant even if documents are stored electronically). This factor turns upon which party "most probably [has] the greater volume of documents relevant to the litigation and their presumed location in relation to the transferee and transferor venues." *Id.* (citing *In re Nintendo Co.*, 589 F.3d 1194, 1199 (Fed. Cir. 2009); *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009); and *Volkswagen II*, 545 F.3d at 314–15). "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech*, 566 F.3d at 1345 (citation omitted). "That access to some sources of proof presents a lesser inconvenience now than it might have absent recent developments does not render this factor superfluous." *Volkswagen II*, 545 F.3d at 316.

The Container Store asserts that its documentary and physical evidence is located at its Coppell facility in the NDTX. [Dkt. No. 22], 6. The Container Store contends that the Coppell facility is the location for (1) the accused website's design, development, maintenance, and operating testing activities, (2) four employees who will most likely offer testimony about the accused products, and (3) the source and design documents for the accused website. *Id.* In contrast, The Container Store argues, CXT is unlikely to have any documentary or physical evidence in this District beyond documents related to the patents-in-suits, given that CXT is an apparent non-practicing entity. *Id.* at 7.

In contrast, CXT argues that this factor does not weigh in favor of transfer because (1) The Container Store has not identified its sources of proof with specificity, (2) The Container Store has not identified any physical evidence that would be difficult to convert into an electronic medium, and (3) CXT's documents and sources of proof are located in this District, and its ties to this

District should be not ignored given that CXT operated its business in this District for thirteen months before filing this lawsuit. [Dkt. No. 25], 8-11.

While CXT is based within the EDTX and thus at least some of the documentary evidence will be located at CXT's Marshall office, The Container Store has identified two sources of documentary proof located in the NDTX with sufficient specificity – the design, development, maintenance, and operating testing activities for the accused website, and the source code and design documents for the accused website. The Container Store has also provided the names and occupations of four employees, along with their knowledge of the accused website, *see* Manson Decl., [Dkt. No. 22-13], whereas CXT only has one employee who can offer testimony, *see* Scahill Decl., [Dkt. No. 25-1]. Accordingly, this factor weighs in favor of transfer, but only slightly given the relatively minor distances involved.

**ii. Costs for Witnesses**

When analyzing this factor, all parties and witnesses must be considered. *Volkswagen I*, 371 F.3d at 204. "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204-05. The Fifth Circuit clarified that the 100–mile "threshold" in this factor has greater significance when the distance is greater than 100 miles. *In re Radmax*, 720 F.3d at 289. A district court should assess the "relevance and materiality of the information the witness may provide," but it is not necessary for a party "to show that the potential witness has more than relevant and material information." *In re Genentech*, 566 F.3d at 1343. Additionally, the existence or non-existence of direct flights can impact this analysis. *See Verde v. Stone Ridge, Inc.*, No. 6:14-CV-157, 2014 WL 12489758, at *3 (E.D. Tex. Aug. 25, 2014) (citing *Volkswagen I*, 371 F.3d at 204, n. 3).

**a. Party Witnesses**

The Container Store argues that most of the likely witnesses in this case are its employees who work roughly 170 miles from Marshall, Texas, compared to approximately 20 miles from the federal courthouse in Dallas, Texas. [Dkt. No. 22], 8. The Container Store points out that CXT's only employee and CEO, Jon Scahill, resides in New York, despite his occasional work in Marshall. *Id.* at 8-9.

This case involves four The Container Store party witnesses compared to one CXT party witness. In any case, the identified witnesses for both parties are party witnesses, whose convenience is given diminished weight, as "it is the convenience of non-party witnesses, rather than of party witnesses, that is more important and accorded greater weight in a transfer of venue analysis." *Frito-Lay N. Am., Inc. v. Medallion Foods, Inc.*, 867 F. Supp. 2d 859, 870-71 (E.D. Tex. 2012).

**b. Non-Party Witnesses**

The Container Store argues that a number of non-party witnesses would find the NDTX more convenient due to access to two airports in Dallas. [Dkt. No. 22], 9. The Container Store points out that (1) there may be a source of witnesses in several Delaware entities (located in Delaware and New York) with a financial interest in CXT and this case; and (2) the named inventors, who reside in California, Georgia, and Washington state, and the prosecuting attorneys of the patents-in-suit, who work in Minnesota, Washington, D.C., California, Virginia, Georgia, Utah, and Washington state, are potential witnesses, and thus must travel a significant distance no matter where they testify. *Id.* at 8-10.

CXT responds that The Container Store has not explained how the inventors and prosecuting attorneys would be relevant to this action. *Id.* In any case, CXT argues, these

individuals are located across the country, and must travel a significant distance to testify no matter if the case remains in this District or is transferred to the NDTX. *Id.* CXT contends that the widespread locations of these witnesses actually weigh against transfer. *Id.* (citing *ComCam Int'l, Inc. v. Mobotix Corp.*, No. 2:13-CV-00798-JRG, 2014 WL 4229711, *3-4 (E.D. Tex. Aug. 26, 2014)). Finally, CXT points to The Container Store's Initial and Additional Disclosures that identified Borderfree, headquartered in New York City, and Usablenet, located in New York, as third-parties involved in the technical operation of the accused website. *Id.* at 16.

In the Court's view, The Container Store "glosses over the fact that none of the non-party witnesses actually reside within the [NDTX]." *ComCam*, 2014 WL 4229711, at *3. Indeed, both CXT and The Container Store argue that potential non-party witnesses are spread across the continental United States: Delaware, New York, California, Georgia, Washington state, Minnesota, Washington, D.C., Virginia, and Utah. These witnesses will incur travel expenses no matter the location. Moreover, and significantly, "to the extent certain witnesses (i.e. the inventors or prosecuting attorneys) are called to testify, they will likely be called in each of the [consolidated and co-pending] actions involving the [patents-in-suit]." *Id.* "Transfer of this case to the [NDTX]" while the seven co-pending consolidated cases remain in EDTX, "is therefore likely to multiply, not minimize, the inconvenience to such witnesses." *Id.* The Container Store has failed to show that transfer would reduce the total inconvenience for all non-party witnesses in any material way.

The Container Store narrowly focuses its argument on the cost of attendance for its Coppell-based employees, while ignoring the relative cost of attendance for all other witnesses in other states. Transferring this action to the NDTX simply for the convenience of the four The Container Store employees (which are given diminished weight), and disregarding the fact that

every other witness will have to incur costs no matter if this case is tried in the NDTX or the EDTX, calls for reassignment of inconvenience from certain witnesses to other witnesses. *Van Dusen v. Barrack*, 376 U.S. 612, 645-46 (1964) (recognizing that "Section 1404(a) provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient); *Kahn v. General Motors Corp.*, 889 F.2d 1078, 1083 (Fed. Cir. 1989) (holding that a "transfer is inappropriate when it merely serves to shift inconveniences from one party to the other."). Such a "swap" of inconveniences does not demonstrate that NDTX is a clearly more convenient forum. *See Innoband, Inc. v. Aso Corp.*, No. 2:10-CV-191-TJW-CE, 2011 WL 835934, at *5 (E.D. Tex. Mar. 4, 2011). Accordingly, the Court finds this factor is neutral.

**iii. Other Practical Problems**

"Practical problems include those that are rationally based on judicial economy." *Eolas Technologies, Inc. v. Adobe Sys., Inc.*, 6:09-CV-446, 2010 WL 3835762 (E.D. Tex. Sept. 28, 2010), *aff'd In re Google, Inc.*, 412 Fed. Appx. 295 (Fed. Cir. 2011). Indeed, the Federal Circuit has recognized that the '[c]onsideration of the interest of justice, which includes judicial economy, "may be determinative to a particular transfer motion, even if the convenience of the parties and witnesses might call for a different result."' *Regents of the Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997) (quoting *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 220–21 (7th Cir.1986)). "In this case, the existence of multiple lawsuits involving the same issues is a paramount consideration when determining whether a transfer is in the interest of justice." *Volkswagen II*, 566 F.3d at 1351 (Fed Cir. 2009) (quoting *Cont'l Grain Co. v. The FBL–585*, 364 U.S. 19, 26 (1960) ("[T]he existence of multiple lawsuits involving the same issues is a paramount consideration when determining whether a transfer is in the interest of justice ... [T]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in

different District Court leads to the wastefulness of time, energy and money that § 1404 was designed to prevent.")).

In its response, CXT argues that judicial economy weighs heavily against transfer because this Court is currently presiding over the eight co-pending consolidated cases (which includes this case) that involve the same plaintiff, the same patents-in-suit, and substantially identical claims. [Dkt. No. 25], 6. The Container Store opposes this argument, contending, *inter alia*, that its presence in the NDTX must be contrasted to any alleged judicial economy from co-pending cases and the fact that there are other related co-pending cases does not prevent a case from being transferred. [Dkt. No. 28], 2 (citing *In re Google Inc.*, No. 2017-107, 2017 WL 977038, at *2-3 (Fed. Cir. Feb. 23, 2017)).

The Container Store's reliance on *Google* is misplaced. In *Google,* the Federal Circuit observed that it was "improper for a district to weigh the judicial economy factor in a plaintiff's favor <u>solely</u> based on the existence of multiple co-pending suits, while the remaining defendants have similar transfer motions pending seeking transfer to a common transferee district." 2017 WL 977038, at *3 (emphasis added). The Federal Circuit expressed that "[t]his is particularly important here where the district court concluded that <u>only one factor slightly favored transfer and that the remaining factors were neutral</u>." *Id.* (emphasis added). As discussed further below, the decision to decline transferring this case does not depend solely on the existence of multiple co-pending suits, but on the court's conclusion regarding all the public and private factors.

The Court finds that significant judicial economy would result from having one court decide all of the issues related to the patents-in-suit across the eight co-pending consolidated cases. "To transfer this case to [the NDTX] while [seven] related cases involving the same asserted patents remain in EDTX would unavoidably risk duplicative proceedings involving the same or

similar issues between different district courts and give rise to the inherent danger of potentially inconsistent rulings and constructions*.” RPost Holdings, Inc. v. StrongMail Sys., Inc.*, No. 2:12-CV-515-JRG, 2013 WL 4495119, at *5 (E.D. Tex. Aug. 19, 2013). Accordingly, "[d]ue to such real and practical dangers, the Court finds that the traditional notions of judicial economy lead the Court to find that the 'Other Practical Problems' factor weighs heavily against transfer in this case." *Id.*

**B. Public Interest Factors**

The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Volkswagen I*, 371 F.3d at 203 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). The Container Store contends, and CXT apparently does not disagree, that the conflict of laws factor is neutral. *See* [Dkt. No. 22], 12; [Dkt. No. 25], 18.

**i. Court Congestion**

"To the extent that court congestion is relevant, the speed with which a case can come to trial and be resolved is a factor" in the transfer analysis. *In re Genentech*, 566 F.3d at 1347. This factor is the most speculative and should not alone outweigh the other factors. *Id.*

Here, The Container Store argues that the median time to trial for civil cases in the NDTX was approximately 689 days, compared to 778 days for civil cases before this Court, and thus this data shows that this court is more congested than the NDTX. These statistics do not provide data for patent cases, which tend to have special rules and procedure. This District has adopted patent

rules to ensure that patent cases proceed much more expeditiously. In the Court's view, this factor is neutral as to transfer.

### ii. Local Interest

This factor analyzes the "factual connection" that a case has with the transferee and transferor venues. *Id.* Local interests that could apply to any judicial district or division in the United States are disregarded in favor of particularized local interests. *In re TS Tech*, 551 F.3d at 1321; *Volkswagen II*, 545 F.3d at 318.

The Container Store argues that the NDTX has a strong local interest in resolving this dispute because that District is home to The Container Store's Coppell facility, and the NDTX has a unique local interest in determining whether the numerous employees at the Coppell facility committed the alleged acts of infringement. [Dkt. No. 22], 11. In contrast, CXT argues that the Eastern District has a significant interest in resolving this dispute because CXT is a Texas company with its principal place of business in Marshall. [Dkt. No. 25], 17. Plaintiff further contends that this District has a unique interest in resolving this dispute because this Court is currently presiding over the other co-pending consolidated cases, all of which involve some or all of the patents-in-suits. *Id.*

The focus of this factor is the *local* interest, not the Court's interest. Since The Container Store's facility is located in Coppell, which sits in both districts, and CXT's office is in the EDTX, both districts have interests in the disposition of this case. This shared interest is also due, in part, to the fact that the accused products is a website, which can operate nationwide. Where the accused products are used and sold throughout the country, the alleged injury does not create a substantial local interest in any particular district. *See In re TS Tech*, 551 F.3d at 1321. Accordingly, this Court finds this factor to be neutral.

### iii. Familiarity of the Forum with Law

Patent claims are governed by federal law. "Both [courts] are capable of applying patent law to infringement claims." *See In re TS Tech,* 551 F.3d at 1320. Accordingly, this factor is neutral as to transfer.

## CONCLUSION

The Container Store has not met its "good cause" burden. The private and public interest factors in this case demonstrate that the NDTX is not clearly more convenient than the EDTX: six factors are neutral, one factor slightly favors transfer, and one factor strongly disfavors transfer. Accordingly, CXT's choice of venue should be respected and The Container Store's motion to transfer [Dkt. No. 22] is **DENIED**.

**SIGNED this 5th day of April, 2019.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE